Two trucks were involved in an accident on May 7, 1943, on Highway No. 51, near Fluker, Louisiana, which gave rise to this suit for damages. Plaintiff's truck was being driven by a negro named Ezrie Williams and the other truck belonging to A.J. Parrino, insured by the defendant, was being driven by a white man named Woodrow Cornwall. Williams was alone in the plaintiff truck while Cornwall was attended by his brother, Warren Cornwall, who was helping him, in the Parrino truck.
The plaintiff is engaged in business at Amite. Its truck was on a trip to Flucker where it was to deliver a load of fertilizer to a place referred to as Eugene Watson's. There is a private driveway leading from the highway into the property which is situated on the west side of the highway. The Parrino truck had come out of New Orleans the morning of the accident with a load of produce and was making deliveries along the highway. Its destination was Vicksburg, Mississippi. It left New Orleans at about eight in the morning, had made two deliveries and had reached Flucker at about one o'clock in the afternoon, the hour of the accident. Both trucks were going north, the Parrino truck following the Stern truck, and the collision occurred at the place where the Watson driveway intersects the main highway.
The accident was a rather unusual one and both drivers are charged by the respective parties litigant with the negligence which caused it. Plaintiff contends that the *Page 105 
defendant truck driver was going at an excessive speed, that he was grossly inattentive, being either under the influence of drink, or sleeping, and that he was certainly not keeping a proper lookout ahead. Demand was made for damage to the truck in the sum of $243.76 and for loss of its use while it was being repaired. The defendant claims on the other hand that the accident was caused by the neglience of the plaintiff driver in cutting to the left in front of its truck, in order to enter the private driveway, without giving warning or signal of any kind and without slowing down before doing so. A demand was made in reconvention in the sum of $832.67 for the damage done to that truck.
The trial judge, without assigning written reasons, rendered judgment in favor of the plaintiff for the actual damage to its truck. Defendant appealed and plaintiff then answered asking for an increase by allowing the rental value of the truck during the time it could not be used and also for damages in the sum of ten per cent for frivolous appeal.
[1] We believe that the negligence of the defendant truck driver is shown by the course taken by his truck following the collision. If nothing else, he certainly must have been going at a very fast rate of speed for it to have run over the sort of terrain it did some two hundred feet from the point of contact. We are also convinced, however, that the driver of the plaintiff truck was guilty of negligence which contributed to the accident. We can hardly believe that the driver of the Parrino truck would have purposely chased the plaintiff truck, as it were, after it had turned off from the highway into the private driveway, and run it down, which is about the way the accident would have happened according to the negro driver of the Stern truck. We rather believe that it was the sudden movement of the plaintiff truck which caused the defendant driver to do what he did in order to meet the emergency presented. As, according to the speed of his truck, or his loss of control over it, he had a part in creating the emergency defendant could not urge relief under the doctrine of sudden emergency invoked in such cases.
That there was some unexpected or sudden movement of the plaintiff truck appears to be borne out by the driver's own testimony. He says that on looking in the rear vision mirror of his truck, he saw the defendant truck behind him and he "thought" he had time to make it. "After I turned, I thought I was in the clear, which I was, off the highway. I looked behind and the truck was about eight feet from me and me and him was both off the highway." That's quoted from his testimony. He says he gave a hand signal that he would make the turn but this is denied by both occupants of the defendant truck. From his quoted statement it may be asked, when did he look in his mirror? It seems that it was after he had made the turn, at which moment the other truck was only eight feet back of him. Clearly he looked too late and as he indicates by his own testimony took a chance, "thinking" that he could make it.
It is shown that the plaintiff truck, after the impact, came to rest on the east side of the highway, facing northwest, indicating that it made an almost complete turn to its right. That being so it would seem to be a physical impossibility for it to have already made the turn to its left into the driveway on the west when it was struck. It would have been facing west and to say that a blow placed directly against its left door could have driven it completely around to the right again, sounds highly improbable.
[2] There is testimony of other witnesses relating to the physical facts but it is very indefinite, and by no means convincing on the point as to how exactly the accident did happen. Under the facts as we find them we have concluded that the negligence of both drivers had something to do with the accident and that being the case neither party to the suit can recover damages.
For the reasons stated it is ordered that the judgment appealed from be and the same is hereby reversed, annulled and set aside and it is now further ordered that there be judgment in favor of the defendant on the main demand rejecting plaintiff's demand and dismissing its suit, and in favor of the plaintiff on the defendant's reconventional demand, rejecting and dismissing the same. Costs in both Courts on the main demand are to be borne by the plaintiff and those on the demand in reconvention to be paid by the defendant. *Page 106